## THE CRESCENT. THE GUIDING STAR. THE JACOB N. HEATH. THE LEACH BROTHERS.

(District Court, E. D. New York. May 21, 1923.)

1. **Collision ⬡⇒95(2)—Meeting tugs both held in fault for collision between tows.**
   Two tugs *held* in fault for a collision between their tows when meeting and passing port to port in Arthur Kill in the daytime, the one southbound, with six light barges in tow in three tiers, which, under the influence of the tide and a strong west wind, were sagging to port, for accepting a signal to pass port to port, or for not keeping her tow to the starboard side of the channel, and the north-bound tug, with three heavy barges tandem, for giving such signal, or for not stopping when her master saw that the tow of the other tug had swung far to port, creating danger of collision.

2. **Collision ⬡⇒95(2)—Helping tug held not in fault for collision between tows.**
   A helping tug, made fast to the other tug, by which her movements were guided, *held* not chargeable with fault for a collision between the tow and that of a meeting tug, to which the fault of the leading tug contributed.

In Admiralty. Suit for collision by John F. Leach, owner of the barge Leach Brothers, against the steam tugs Crescent, Guiding Star,

⬡⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and Jacob N. Heath.  Decree for libelant against the tugs Crescent and Guiding Star.

Macklin, Brown & Van Wyck, of New York City, for libelant.

Harrington, Bigham & Englar, of New York City, for the Crescent.

Foley & Martin, of New York City, for the Guiding Star and the Heath.

CAMPBELL, District Judge.  A libel was filed herein against the steam tugs Crescent, Guiding Star, and Jacob N. Heath by the owners of the barge Leach Brothers, for damages caused to said barge by collision.  On the 29th day of April, 1920, the steam tug Crescent took six light barges in tow from Pier 4, Brooklyn, to Perth Amboy, through the Arthur Kill.  Said tow was made up of three tiers, of two barges each; the Leach Brothers being the port boat in the last tier.

On the same day the steam tug Guiding Star took three heavy copper lighters in tow from the Raritan Copper Works, bound northerly through the Arthur Kill.  Said tow was made up as a tandem tow, and the Guiding Star had the steam tug Jacob N. Heath to assist her. The tugboat Jacob N. Heath was made fast on the starboard side of the Guiding Star, but the said Heath had no lines aboard the tow, nor was she being steered by her own wheel, but was being directed as to her course by the wheel of the Guiding Star, the master of the Guiding Star being at the wheel.  The Crescent had her tow on two hawsers, one on the outside of each of the first two boats, the tiers being but a few feet apart, and the Guiding Star, with the Heath made fast on her starboard side, had her tow on a bridle line to the hawser boat of about 200 feet; the boats of the tow being only a few feet apart.

[1] Some time between 11 and 12 o'clock in the morning of that day, just before the Crescent and her tow were opposite the Graselli Chemical Works, the steam tug R. J. Moran, with a lumber barge in tow on her side, being on the starboard bow of the Crescent, gave a two-whistle signal, which the Crescent answered with a two-whistle signal, and they passed starboard to starboard, the Crescent having headed toward the center of the channel and the rear of her tow swung some distance toward the Staten Island shore; the steam tugs Guiding Star and Heath, with the tow, having come around a bend and being astern of the R. J. Moran, headed over toward the Staten Island shore, and the Crescent headed toward the New Jersey shore.  The Guiding Star then gave a one-whistle signal, which was answered by the Crescent with a one-whistle signal, and they passed port to port.  The Guiding Star and Heath went clear of the Crescent and her tow, but the Leach Brothers, the port boat of the last tier of the Crescent's tow, struck the hawser boat of the Guiding Star's tow, doing her some damage.

The tide was flood, and the wind was from the northwest, blowing very hard.  The Crescent was making slow speed on account of her bucking the tide, and the boats of her tow, being light, were feeling the effects of the wind, which was blowing them over toward the Staten Island shore, compelling the Crescent to head up toward the New Jersey shore, to bring her tow as nearly as might be into line.

The tow of the Guiding Star, being heavy, did not feel the force of the wind to the same extent as the tow of the Crescent, but was fairly straight behind the tug.

The master of the Guiding Star testified that he could, for some time before he passed the Crescent, see the swing of her tow across the channel toward the Staten Island shore, and the Crescent heading up to the New Jersey shore to straighten out her tow. The Guiding Star had a right under the rules to pass port to port on the one-whistle signal, which was accepted by the Crescent, if it was possible; but the Guiding Star had no right to place herself in a position where a collision might reasonably be expected. The George S. Tice (C. C. A.) 287 Fed. 127.

From the testimony of the master of the Guiding Star as to the action of the Crescent's tow in swinging across the channel from time to time in the manner he described, a collision was exactly what might have been expected, and common sense requires that no boat shall deliberately place herself in a position of danger, merely in compliance with a rule, especially when a choice is offered which may reasonably be expected to give safety. Whether the master of the Guiding Star should have waited with his tow or gone to starboard is not for me to say. It was a fact that the R. J. Moran, with her tow, had gone safely to starboard of the Crescent, and while it was true that her tow was more easily handled, being alongside, yet, if the testimony of the master of the Guiding Star is true, that he was able at all times to keep his tow in line with the tug, then he could also have safely gone to the starboard of the Crescent.

The Crescent, having accepted the one-whistle signal of the Guiding Star, was bound to keep her tow up, but either was unable so to do and should have had assistance, or she allowed the tow to drag her over toward the Staten Island shore, and only from time to time pulled up her tow toward the New Jersey shore. I do not believe that the Guiding Star changed her course just after she passed the end of the Crescent's tow, and thus caused or contributed to the collision, but I do believe that all the witnesses were in error about the distances of the several boats from the New Jersey or Staten Island shores, respectively, and that all of said boats were further out in the stream than the distances specified, because otherwise it would be impossible to harmonize the testimony given as to the distances separating the several boats when passing, or to have made it possible for any collision whatever to take place.

[2] The Jacob N. Heath was not being piloted by her master or any of her crew, but was under power, made fast alongside of the Guiding Star, and was being steered by the wheel of the Guiding Star, which was in charge of the master thereof. I am therefore of the opinion that the Jacob N. Heath was without blame for the collision. The Leach Brothers was without blame for the collision.

The Crescent, having accepted the one-whistle signal, was to blame for not keeping her tow to the side of the fairway or mid-channel which was toward the New Jersey shore, and if this was beyond the power of the Crescent, then she was to blame for not having a helper. The Guiding Star was to blame for not avoiding the collision, which her

master, as shown by his testimony, might have reasonably expected, and it is not necessary for me to determine whether he should have accomplished this by stopping or passing on the other side.

A decree will be entered in favor of the libelant against the Crescent and the Guiding Star for one-half damages against each, with costs, and the usual order of reference will issue.